## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CON NIKOLOUZAKIS and CHRIS SIAKOS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C. A. No. 11-1261-LPS-MPT |
| EXINDA CORPORATION, GEORGE ROBERTS, ROBERT H. SCOTT, FIRAS RAOUF, SCOTT MAXWELL, and OPENVIEW VENTURES PARTNERS, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## <u>REPORT AND RECOMMENDATION</u>

### I. Introduction

Plaintiffs, Con Nikolouzakis ("Nikolouzakis") and Chris Siakos ("Siakos") (collectively, "Plaintiffs") brought this action against defendants, Exinda Corporation ("Exinda"), George Roberts ("Roberts"), Robert H. Scott ("Scott"), Scott Maxwell ("Maxwell"), Firas Raouf ("Raouf"), and OpenView Venture Partners ("OpenView") (Roberts, Scott, Maxwell, and Raouf are collectively referred to as "Individual Defendants;" Individual Defendants and Exinda are collectively referred to as "Defendants").[1]

Plaintiffs allege Defendants and OpenView committed:  fraud, equitable fraud, intentional interference with prospective economic advantage, negligent interference

---

[1] Roberts, Scott, Maxwell, and Raouf are or were directors of the board of Exinda, at the time period in question. (D.I. 1 at ¶ 5).

with prospective economic advantage, conversion, and unjust enrichment.  Plaintiffs

also assert, Defendants committed:  breach of fiduciary duty, bad faith termination, and

violation of 19 *Del. C.* §1103.  Plaintiffs further contend, OpenView aided and abetted

the breach of fiduciary duty.

## II.  Background[2]

Plaintiffs co-founded Exinda in 2001, and grew the business in Australia through

2006.  In 2006, Plaintiffs reorganized Exinda as a Delaware corporation in order to

expand internationally.  Plaintiffs were the principal shareholders when Exinda

reorganized, with Nikolouzakis serving as CEO and Siakos serving as CTO.  Both were

on Exinda's board of directors.[3]

After the reorganization, Exinda was sold to OpenView, a venture capital fund.

The reason for the sale was the Plaintiffs, although being excellent engineers, were

unsophisticated business people.  As such, Plaintiffs needed OpenView's partners,

Maxwell, Raouf, and Roberts, for their experience and "business acumen to guide the

business and [the] financial side . . . ."  This resulted in Maxwell, Raouf, and Roberts

joining Exinda's board of directors.[4]  Around the same time, Exinda established its

principal place of business in Canada.[5]  Purportedly, Maxwell, Raouf, and Roberts

represented it would be in Plaintiffs and Exinda's best interest if Plaintiffs focused on

developing Exinda's technical and engineering capabilities in Australia.  As a result of

such recommendations and similar representations by Exinda's agent, Michael Sharma

---

[2] The Background is viewed in accordance with a motion to dismiss, in the light most favorable to plaintiffs.
[3] D.I. 1 at ¶¶ 27-8.
[4] D.I. 1 at ¶¶ 29- 30; D.I. 17 at 2.
[5] D.I. 1 at ¶ 24.

("Sharma"),[6] Plaintiffs resigned their positions on the executive team and the board of directors.  Nikolouzakis then took a new position as Chief Product Officer.[7]

In 2009, Plaintiffs transitioned from board members to board advisors.  Plaintiffs contend this transition was due to Raouf's "knowingly fraudulent representations" that Exinda would best be served by this transition.[8]  Once Plaintiffs became board advisors, they lost their voting rights and access to information.

As part of the scheme to undermine them, Plaintiffs maintain Defendants would "reschedule board meetings in the middle of the Australia night, omit[ ] the founders from key correspondence, and . . . block [their] access to information."[9]  At the same time Maxwell, Raouf, Roberts, Sharma, and another Exinda agent, Efrem Ainsley ("Ainsley"),[10] knowingly represented to Plaintiffs that they were receiving full information and their best interests were being protected.[11]

As the business grew, Exinda needed and sought additional funding.  Exinda received additional funding from OpenView.  Maxwell and Raouf induced Plaintiffs to agree to more outside financing, by their representation that "success would result in the elimination of any financing premiums or deep dilution provisions."[12]  Plaintiffs allege the additional funding or alternative financing arrangements resulted in OpenView having conflicting interests with those of Exinda's shareholders, including Plaintiffs.  Plaintiffs agreed to this alternative financing because of the representations by

---

[6] Sharma is or was the CEO of Exinda, Inc., during the time period in question. *Id.* at ¶ 8.
[7] *Id.* at ¶¶ 32-3.
[8] *Id.* at ¶ 36.
[9] *Id.* at ¶ 37.
[10] Ainsley is or was the CFO of Exinda, Inc., during the time period in question. *Id.* at ¶ 8.
[11] *Id.* at ¶ 37.
[12] *Id.* at ¶¶ 28-9.

Defendants.[13]

In December 2010, at the start of Australia's Christmas holiday, Ainsley, Sharma, and Exinda's outside counsel "made a series of oral and written misrepresentations to [Plaintiffs] that Exinda was in trouble and needed to urgently execute financing documents as soon as possible."[14]  Plaintiffs were sent only the signature pages of documents, without any information, analysis, or time to review the materials.[15] Plaintiffs allege they relied on Defendants' assurances and fiduciary obligations in executing and returning the signature pages immediately.  Plaintiffs believe Defendants were also seeking other outside financing and valuations of Exinda, that indicated Exinda would be worth $90 million, which is above the threshold amount represented by Defendants, where OpenView's financing preferences would be eliminated.[16]

In May 2011, Plaintiffs discovered the December 2010 documents eliminated nearly 90% of their ownership interest in Exinda.  Plaintiffs insist, these documents were part of a scheme by Defendants to convert Plaintiffs' stock and option holdings to the Individual Defendants' benefit and to Sharma and Ainsley through new option grants.[17] Plaintiffs confronted Maxwell, Raouf, Sharma, and Ainsley in May and in June 2011, and were told their, Plaintiffs', equity interest was being increased by valuable option grants.[18]

In late October 2011, Exinda had posted three consecutive quarters of record-

---

[13] *Id.* at ¶ 35.
[14] *Id.* at ¶ 38.
[15] *Id.*
[16] *Id.* at ¶ 39.
[17] *Id.* at ¶ 40.
[18] *Id.* at ¶ 41.

breaking results; however, Plaintiffs were terminated, and their stock options were cancelled shortly before their options vested.[19]  In addition, Plaintiffs maintain each are owed $85,000 in back-pay and earned commission.[20]

On December 19, 2011, Plaintiffs filed this suit against Defendants and OpenView.[21]  On February 13, 2012, Defendants and OpenView filed the present motion to dismiss.[22]  On April 2, 2012, Plaintiffs filed a motion to strike certain exhibits relied on by Defendants and OpenView in their motion to dismiss.[23]

## III.  Jurisdiction and Venue

Pursuant to 28 U.S.C. § 1332, this court has jurisdiction over this matter because the amount in controversy exceeds seventy five thousand ($75,000), exclusive of interest and cost, and is between citizens of a state and citizens of a foreign state.

Pursuant to 28 U.S.C. § 1391, venue properly exists in this court because Exinda is incorporated in Delaware, OpenView is organized under the laws of Delaware, the Individual Defendant's are directors of Exinda, and the alleged acts and omissions were committed in Delaware.

## IV.  Standard of Review

### A.  Motion To Strike

"Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" when reviewing a

---

[19] *Id.* at ¶ 43.
[20] *Id.* at ¶ 65.
[21] D.I. 1.
[22] D.I. 13.
[23] D.I. 18.

motion to dismiss.[24]  Federal Rule of Civil Procedure ("FED. R. CIV. P. ") 12(d) addresses

the use of materials which are outside the pleadings in motions to dismiss under Rule

12(b)(6).  Generally, when such materials are presented, the motion is treated as one

for summary judgment.  However, certain additional materials may be considered

without converting the motion to dismiss into a motion for summary judgment.

Moreover, a court is not limited to the four corners of the complaint and may consider

"matters incorporated by reference integral to the claim, items subject to judicial notice,

matters of public record, orders [and] items appearing in the record of the case."[25]  A

plaintiff is entitled to notice and a fair opportunity to respond to any evidence the court

might consider in its review of a motion to dismiss.  Where a plaintiff had such notice,

however, it is proper for the court to consider that evidence.[26]

### B.  Motion to Dismiss

In analyzing a motion to dismiss under Rule 12(b)(6), a review of FED. R. CIV. P.

8(a)(2) is necessary.  Rule 8(a)(2) requires a pleading to contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."  That standard

"does not require 'detailed factual allegations,' but . . . demands more than an

---

[24] *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).
[25] *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citing 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (2004)).  Taking judicial notice of public records of a State court action and an appeal therefrom.  *See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records, *including judicial proceedings*, in addition to the allegations in the complaint.")  (emphasis added).  Further, "exhibits attached to the complaint whose authenticity is unquestioned" may also be considered.  5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2007).
[26] *Pension Benefit*, 998 F.2d at 1196-97 ("When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.") (internal citations omitted).

unadorned, the-defendant-unlawfully-harmed-me accusation."[27]  Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[28]  The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case.[29]  Evaluating a motion to dismiss requires the court to accept as true all material allegations of the complaint.[30]  "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."[31]  A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[32]

To survive a motion to dismiss under Rule 12(b)(6), however, the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[33]  A plaintiff is obliged "to provide the 'grounds' of his 'entitle[ment] to relief'" beyond "labels and conclusions."[34]  Heightened fact pleading is not required:  rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[35]

The plausibility standard does not rise to a "probability requirement," but  requires

---

[27] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007)).

[28] *Id.* (citing *Twombly*, 550 U.S. at 570); *see* Fed. R. Civ. P. 12(b)(6).

[29] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[30] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

[31] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citation omitted).

[32] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).

[33] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

[34] *Twombly*, 550 U.S. at 555.

[35] *Id.* at 570.

"more than a sheer possibility that a defendant has acted unlawfully."[36]  Rejected are

unsupported allegations, "bald assertions," or "legal conclusions."[37]  Further, "the tenet

that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions."[38]  Moreover, "only a complaint that states a plausible

claim for relief survives a motion to dismiss," which is a "context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."[39]

Thus, well-pled facts which only infer the "mere possibility of misconduct," do not show

that "'the pleader is entitled to relief,'" under Rule 8(a)(2).[40]  "When there are well-

pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an entitlement of relief."[41]

### C. Fraud or Sounding in Fraud

If a plaintiff pleads fraud, or a claim sounding in fraud, then FED. R. CIV. P. 9(b)

applies.  Under this rule, the elements of fraud must be pled with particularity.  The

purpose of the heightened pleadings requirements of Rule 9(b) is to "deter the filing of

charges of fraud as a pretext for discovery of unknown wrongs."[42]  Fraud allegations,

however, "remain subject to the liberal pleading standard of FED. R. CIV. P. 8, which

requires only a 'short and plain' statement of a claim or defense," the purpose of which

---

[36] *Iqbal*, 129 S. Ct. at 1949.
[37] *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light* Co., 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).
[38] *Iqbal*, 129 S. Ct. at 1949; *see also Twombly*, 550 U.S. at 555 (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").
[39] *Iqbal*, 129 S. Ct. at 1950.
[40] *Id.*
[41] *Id.*
[42] *Stowe Woodward L.L.C. v. Sensor Products, Inc.*, 230 F.R.D. 463, 466 (W.D. Va. 2005).

is to place the opposition on notice of the misconduct charged.[43]  Further, the

particularity requirement does not mandate a party plead the date, time, or place of the

alleged fraud, if that party uses "an alternative means of injecting precision and some

measure of substantiation into [its] allegations of fraud."[44]  Thus, "courts still must apply

FED. R. CIV. P. 9(b) with some flexibility so that a party is not required to plead issues

which may have been concealed by an adverse party."[45]

## V.  Discussion

### A.  Motion to Strike

Plaintiffs, through FED. R. CIV. P. 12(f), seek to strike and exclude exhibits 'A'

through 'F' of the Declaration of Maxwell,[46] pursuant to FED. R. CIV. P. 12(d).

The first argument advanced by Plaintiffs is the exhibits are not incorporated by

reference; therefore, the exhibits are extrinsic evidence and the court should not

consider them.  Plaintiffs cite *Smith v. Westchester County*[47] for the proposition that

absent "a clear, definite and substantial reference to the documents,"[48] the exhibits

should be struck.

Defendants and OpenView assert Plaintiffs do not dispute the exhibits are

"integral to the complaint;"[49] however, even accepting Plaintiffs' argument, since the

---

[43] *McKesson Information Solutions LLC v. The Trizetto Group, Inc.*, C.A. No. 04-1258-SLR, 2005 WL 914776, at *3 (D. Del. Apr. 20, 2005); *TruePosition, Inc. v. Allen Telecom, Inc.*, C.A. No. 01-823-GMS, 2003 WL 151227, at *5 (D. Del. Jan. 21, 2003).

[44] *Martek Biosciences Corp. v. Nutrinova Inc.*, C.A. No. 03-896-GMS, 2004 WL 2297870, at *3 (D. Del. Oct. 8, 2004).

[45] *Mars Inc. v. JCM American Corp.*, C.A. No. 05-3165 (RBK), 2006 WL 1704469, at *5 (D.N.J. June 14, 2006) (citing *Rolo City Investing Co. Liquidation Trust*, 155 F.3d 644, 658 (3d Cir. 1998) (*rev'd on other grounds by Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000))).

[46] Declaration of Scott Maxwell (D.I. 15).

[47] *Smith v. Westchester County*, 769 F. Supp. 2d 448 (S.D.N.Y. 2011).

[48] D.I. 18 at 3. (citing *Smith*, 769 F. Supp. 2d at 460).

[49] D.I. 23 at 3.

complaint is based on the exhibits, they should not be struck.[50]  Defendants and

OpenView rely on the comment in *In re Burlington Coat Factory Securities Litigation*,

that "a court may consider a document that is 'integral to or explicitly relied upon in the

complaint.'"[51]  Defendants and OpenView assert these exhibits are integral because

they flatly contradict the allegations in the complaint.[52]

    In response, Plaintiffs point out "explicitly referenced means that the document

must be actually quoted, cited, or named."[53]  Plaintiffs counter, the rationale underlying

the integral exception, described in *Burlington Coat Factory*, contrary to Defendants'

and OpenView's position, is to prevent a party from cherry-picking a few isolated lines

from a document and using them out of context.[54]

    Under *Burlington Coat Factory*, the court may consider a document if it is integral

to or explicitly relied on in the complaint, and if a plaintiff's claims relied on the

document, it does not have to explicitly cited.[55]

    In addressing Plaintiffs motion to strike, the critical inquiry is whether the

complaint is based upon extrinsic material,[56] and if the extrinsic material relied on is

undisputedly authentic.[57]  Even if the court finds the claims are based on the exhibits at

issue, and they are authentic, it remains within the court's discretion to consider the

---

[50] *Id.*

[51] 114 F.3d 1410 (3d Cir. 1997).

[52] D.I. 23 at 5 (quoting *I.S. Sahni, Inc. v. Scirocco Fin. Grp.*, No. 04 Civ. 9251, 2005 WL 2414762, at *4 (S.D.N.Y. Sept. 28, 2005).

[53] D.I. 29 at 3 (*see In re Appleseed's Intermediate Holdings, LLC*, Civ. No. 11-807 (JEI/KMW), 2012 WL 748652, at *5 (D. Del. Mar. 7, 2012).

[54] D.I. 29 at 4.

[55] *Burlington Coat Factory*, 114 F.3d at 1426.

[56] *Burlington Coat Factory*, 114 F.3d at 1426 (*see In re Trump Casino Sec. Litig.-Taj Mahal Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) (citing *Pension Benefit*, 998 F.2d at 1196 (3d Cir. 1993))).

[57] *Pension Benefit*, 998 F.2d at 1196.

exhibits, as noted in *Pension Benefit Guar. Corp. v. White Consul. Indus., Inc.,*[58] "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[59]

### 1. Exhibits A through E[60]

Exhibits A though E were not explicitly relied upon by Plaintiffs.  Further, exhibits A - E are not alleged to be the entirety of the agreements between the parties. Therefore, because exhibits A through E are not verified to be the full, complete, or entirety of the agreements between the parities, Plaintiffs' motion to strike exhibits A through E of the Maxwell affidavit is granted.

### 2. Exhibit F[61]

"Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"[62]  In *Oran v. Stafford,*[63] the Third Circuit agreed with the Second Circuit's reasoning in *Kramer v. Time Warner,*[64] in permitting judicial notice of the Securities and Exchange Commission's publicly filed documents.  The reasoning in *Kramer* was that "the documents are required by law to be filed with the SEC, and no serious questions as to their authenticity can exist."[65]  Similarly, exhibit F is a public document certified by Delaware's Secretary of State, and there can be no serious question as to its authenticity.  Therefore, Plaintiffs motion to strike exhibit F (Restated

---

[58] 998 F.2d 1192 (3d Cir. 1993).
[59] *Id.* at 1196.
[60] D.I. 15, Ex. A through E attached to the affidavit of Scott Maxwell.
[61] D.I. 15, Ex. F.
[62] *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000) (internal citations omitted).
[63] *Id.*
[64] *Kramer v. Time Warner, Inc.,* 937 F.2d 767 (2d Cir. 1991).
[65] *Oran,* 226 F.3d at 289 (quoting *Kramer,* 937 F.2d at 774).

Certificate of "Exinda Inc.")[66] is denied.

## B. Motion to Dismiss

In federal diversity actions, the court applies federal law for procedural issues, and state law for substantive issues.[67] Thus, for the ten counts at issue, state law applies for the substantive analysis.

## Count I:  Fraud

Under Rule 9(b), a plaintiff must plead "with particularity the circumstances constituting fraud."[68]  "Rule 9(b) serves to give defendants 'notice of the claims against them, provide[ ] an increase measure of protection for their reputations, and reduce[ ] the number of frivolous suits brought solely to extract settlements.'"[69]

Under Delaware common law, fraud consist of:  "1) a [specific] false representation, usually one of fact, made by the defendant;  2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth,"[70] or by the "deliberate concealment of material facts, or by silence in the face of a duty to speak . . . in order to prevent statements actually made from being misleading;"[71] "3) an intent to induce the plaintiff to act or refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation;

---

[66] Under Federal Rules of Evidence 201(c)(2), the court must take judicially notice of Exhibit F because all the necessary information was supplied, it is a public document, it is generally known in Delaware; as certified by the Secretary of State its accuracy cannot be reasonably questioned; it is required by law to be filed, and therefore it not subject to any reasonable dispute.

[67] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[68] FED. R. CIV. P. 9(b).

[69] *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 270 (3d Cir. 2006) (alterations in original) (quoting *Burlington Coat Factory*, 114 F.3d at 1418).

[70] *Stephenson v. Capano Develop., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931)); *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

[71] *Stephenson*, 462 A.2d at 1074.

and 5) damage to the plaintiff as a result of such reliance."[72]

### 1. Specific False Representation Made By Defendants

Plaintiffs allege that Maxwell made the following false representations to them: (a) "success would result in the elimination of any financing premiums or deep dilution provisions;" (b) Plaintiffs' best interests would be served by OpenView's alternative financing agreements; and (c) the documents executed in December 2010 would "[result] in the [Plaintiffs'] equity interest being increased and [they would] be given valuable option grants."[73]

Raouf is accused of making the same false representations as Maxwell, however, in addition, he purportedly misrepresented that Plaintiffs' best interests would best be served if they gave up their positions as board members.[74]

Plaintiffs contend Scott's false representations to be: (a) after the investment by OpenView, he assured Plaintiffs that their best interests were being advanced and protected; and (b) their best interests would be further benefitted by OpenView's alternative financing agreements.[75]

Plaintiffs assert OpenView, through its agents, made the following false representations: (a) after its investment, OpenView's directors misleadingly assured Plaintiffs their interests were being advanced and protected in order to maximize OpenView and OpenView's directors financial gain; (b) their interests would be "best

---

[72] *Stephenson* 462 A.2d at 1074 (citing *Nye Odorless Incinerator*, 162 A. at 510-11). The elements of Delaware's common law fraud mirrors the requirements of Rule 9(b). *See In re Suprema Spec., Inc. Sec. Litig*, 438 F.3d 256, 270 (3d Cir. 2006) (quoting *Shapiro v. UJB Finacial Corp.*, 964 F.2d 272, 284 (3d Cir. 1992)).
[73] D.I. 1 at ¶¶ 25, 39, and 41.
[74] *Id.* at ¶¶ 29, 35, 36, and 41.
[75] *Id.* at ¶¶ 31 and 35.

served by adding executives with more experience," (c) "potential outside capital influxes were not in the [Plaintiffs'] best interest;" (d) OpenView's alternative financing agreements would benefit Plaintiffs; and (e) they would "continu[e] to receive full information and . . . Defendants were looking out for the [Plaintiffs'] best interest."[76]

The same allegations raised against OpenView and Individual Defendants are also asserted against Exinda.[77]  In addition, Plaintiffs purport Exinda, through its agents, advised in December 2010 that "Exinda was in trouble and needed to urgently execute financing documents as soon as possible."[78]

The allegations, noted herein, outlining the false representations made meet the specificity requirement consistent with Rule 9(b) because they "[p]lead the circumstances . . . with sufficient particularity 'to place defendants on notice of the precise misconduct with which they are charged.'"[79]

### 2.  Defendants' Knowledge or Belief

Since "malice, intent, knowledge, and other conditions of a person's mind may be alleged generally,"[80] Plaintiffs have, by asserting Defendants and OpenView knew their representations were false and intentionally omitted material information, meet this element.

---

[76] *Id.* at ¶¶ 31, 32, 34, 35, and 37.
[77] *Id.* at ¶¶ 31, 35, 36, 37, 38, and 41.
[78] *Id.* at ¶ 38.
[79] *In re Heckman Corp. Sec. Litig.*, C.A. No. 10-378-LPS-MPT, 2011 WL 2413999, at *8 (D. Del. June 16, 2011) (quoting *Stubbs v. Bank of America Corp.*, C.A. No. 08-108-SLR-LPS, 2010 WL 659911, at *1 (D. Del. Feb. 23, 2010) (quoting *Eames v. Nationwide Mut. Ins. Co.*, C.A. No. 04-1324-JJF-LPS, 2008 WL 4455743, at *13 (D. Del. Sept. 30, 2008), *aff'd*, C.A. No. 08-4125, 2009 WL 3041997 (3d Cir. Sept. 24, 2009))).
[80] Fed. R. Civ. P. 9(b).

14

### 3.  Intent to Induce Plaintiffs to Act or Refrain From Acting

Because intent may be alleged generally,[81] this requirement is fulfilled by Plaintiffs claiming these misrepresentations were made "in order to induce . . . [them] to act, or decline to act, as Defendants [and OpenView] desired."[82]

### 4.  Plaintiffs' Action or Inaction Taken in Justifiable Reliance

Plaintiffs assert they executed documents, transferred their ownership interests, and resigned their board positions in reliance upon Defendants' and OpenView's conduct which meet the requirement of justifiable reliance.[83]

### 5.  Damage to Plaintiffs as a Result of Such Reliance

Plaintiffs adequately plead they suffered damage as a result of their reliance on Defendants' and OpenView's misrepresentations by specifically claiming diminished ownership interest in Exinda and lost compensation.[84]

Since Plaintiffs have alleged "all of the essential factual background that would accompany 'the first paragraph of any newspaper story' - that is, the 'who, what, when, where, and how of the events at issue,'"[85] Defendants' and OpenView's motion to dismiss Count I is denied.

### Count II:  Equitable Fraud

Equitable fraud was developed by courts of equity "to provide a remedy for

---

[81] *Id.*
[82] D.I. 1 at ¶ 51.
[83] *Id.* at ¶ 52.
[84] *Id.* at ¶ 53.
[85] *In re Heckman*, 2011 WL 2413999, at *8 (D. Del. June 16, 2011) (quoting *Snowstorm Acquisition Corp. v. Tecumseh Prods. Co.*, 739 F. Supp. 2d 686, 701 (D. Del. 2010) (quoting *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276 (3d Cir. 2006))).

negligent or innocent misrepresentations."[86]  As a variety of common law fraud,[87] equitable fraud must meet the heightened pleading standards required by Rule 9(b). Equitable fraud consists of:  1) a false representation, usually one of fact, made by the defendant; 2) the defendant's representation was made negligently or innocently;[88] 3) an intent to induce the plaintiff to act or refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance.

The only difference between Count I and Count II is the second element, which requires the lesser scienter of negligent or innocent false representation, while fraud requires either an intentional or reckless false representation.  Having found the elements of common law fraud adequately pled, Plaintiffs meet the pleading requirements under Rule 9(b) in equitable fraud for the same reasons previously noted herein.  Therefore, Defendants' and OpenView's motion to dismiss Count II is denied.

### Count III:  Breach of Fiduciary Duty[89]

"The ultimate responsibility for managing the business affairs of a corporation falls on its board of directors [under  8 *Del. C.* §141(a)].  In discharging this function the directors owe fiduciary duties of care and loyalty to the corporation and its shareholders."[90]

Before the court can address the adequacy of Plaintiffs' claims "it is important to

---

[86] *Stephenson*, 462 A.2d at 1074.
[87] *Suprema Specialties*, 438 F.3d at 270.
[88] *Gaffin*, 611 A.2d at 472, n.4; *Stephenson*,,462 A.2d at 1074.
[89] In deciding whether Plaintiffs pled a sufficient claim for breach of fiduciary the court will "not rely on an affirmative defense such as the business judgment rule to trigger dismissal of a complaint . . . ." *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005).
[90] *Revlon, Inc. v. McAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 179 (Del. 1986) (citations omitted).

determine whether plaintiffs' purported breaches of fiduciary duty claims are direct or derivative."[91]  The Delaware Supreme Court in *Tooley v. Donaldson, Lufkin & Jenrette*[92] stated the proper analysis to differentiate between direct or derivative claims is through two questions:  "who suffered the alleged harm-the corporation or the suing stockholder individually-and who would receive the benefit of the recovery."[93]

In a subsequent case, *Gentile v. Rossette*,[94] the court found minority stockholders would have a direct claim where:  "(1) a stockholder having majority or effective control causes the corporation to issue 'excessive' shares of its stock [for lesser valued assets] of the controlling stockholder . . . ; and (2) the exchange causes an increase in the percentage of the . . . shares owned by the controlling stockholder . . . [at the expense of the] percentage owned by the . . . minority shareholders."[95]

A controlling stockholder under Delaware law is defined as:  "(1) own[ing] more than 50% of the voting power of a corporation; or (2) exercis[ing] control over the business and affairs of the corporation."[96]  Several stockholders may be deemed a controlling stockholder where they have a voting agreement or a "blood pact to act together," and their aggregated shares constitute more than 50% of the voting power.[97]

If the stockholders are unable to bring a direct claim, the court must then determine if they can bring a derivative action.  Since the directors, rather than the

---

[91] *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 972 (Del. Ch. 2000).
[92] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (Del. 2004).
[93] *Tooley*, 845 A.2d at 1035.
[94] *Gentile v. Rossette*, 906 A.2d 91, 99-100 (Del. 2006).
[95] *Id.* at 100.
[96] *Feldman v. Cutaia*, 956 A.2d 644 (Del. Ch. 2007) (quoting *In re PNB Hold. Co. Share. Litig.*, No. Civ. A. 28-N, 2006 WL 2403999, at *9 (Del. Ch. Aug. 18, 2006) (citing *Kahn v. Lynch Comm. Sys., Inc.*, 638 A.2d 1110, 1113-14 (Del. 1994))).
[97] *Feldman*, 956 A.2d at 658 (citing *PNB Hold.*, 2006 WL 2403999, at *10).

17

shareholders, are empowered under Delaware Law to manage the business affairs of the corporation,[98] in order to bring a derivative claim a plaintiff must, as a threshold, plead "demand futility."[99]

Plaintiffs maintain, as stockholders, they suffered the alleged harm individually, and should receive the benefit of any recovery.  The purported harm committed by the Defendants was they:  enriched themselves and OpenView at the expense of the Plaintiffs' ownership interest, and placed their and OpenView's interests above Plaintiffs; engaged in self-dealing transactions; induced Plaintiffs to act against their own interests; and converted the Plaintiffs' ownership interest for their own use.  Plaintiffs, as minority shareholders, also aver Defendants' conduct diluted Plaintiffs' ownership interest to Defendants' benefit,[100] resulting in "an improper transfer-or expropriation-of economic value and voting power."[101]  Further, Defendants and OpenView used their control to coordinate a scheme to fraudulently enrich themselves."[102]

Viewing the complaint in the light most favorable to Plaintiffs, and accepting the allegations in the complaint as true, the court finds:  Plaintiffs have stated a direct claim because they allege they suffered harm, and are seeking the benefit of the recovery; Plaintiffs have not alleged a derivative claim because they failed to plead demand futility; Plaintiffs alleged sufficient facts to infer Defendants and OpenView agreed to act in concert to diminish Plaintiffs' ownership interest; and Plaintiffs pled the elements

---

[98] *King v. Baldino*, 648 F. Supp. 2d 609, 616 (D. Del. 2009) (quoting *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984) (citing 8 Del. C. §141(a), *overruled on other grounds by Brehem v. Eisner*, 746 A.2d 244 (Del. 2000))).

[99] *King*, 648 F. Supp. 2d at 616 (quoting *Blasband v. Rales*, 971 F.2d 1034, 1048 (3d Cir. 1992)).

[100] D.I. 1 at ¶¶ 5, 8, 40, 62, and prayer for relief at ¶¶ 1, 2, and 5-7.

[101] *Gentile*, 906 A.2d at 100.

[102] D.I. 1 at ¶¶ 5, 61.

required under *Gentile* for a controlling stockholder because Defendants engaged in

self-dealing transactions which increased their voting power, resulting in Plaintiffs'

ownership being diluted.  Therefore, the court finds Plaintiffs pled sufficient facts to bring

a direct claim against Defendants.

To complete the analysis, the court will next address whether Plaintiffs state a

claim for breach of fiduciary duty.

### 1.  Duty of Loyalty

The Delaware Court of Chancery in *Solash v. Telex Corp.*[103] has stated broadly

what is necessary to plead a breach of loyalty claim.  For a breach of loyalty claim a

plaintiff must plead:

> a corporate fiduciary, whether director, officer or controlling shareholder, uses his or her corporate office or, in the case of a controlling shareholder, control over corporate machinery, to promote, advance or effectuate a transaction between the corporation and such person (or an entity in which the fiduciary has a substantial economic interest, directly or indirectly) and that transaction is not substantively fair to the corporation [or shareholders] . . . .  Breach of loyalty cases inevitably involve conflicting economic or other interest . . . .[104]

"Essentially, the duty of loyalty mandates that the best interest of the corporation and its

shareholders take precedence over any interest possessed by a director, officer or

controlling shareholder and not shared by the stockholders generally."[105]

Plaintiffs properly pled a claim of breach of fiduciary duty of loyalty because they

allege Individual Defendants were directors of Exinda,[106] and pursuant to the prior

---

[103] *Solash v. Telex Corp.*, 13 Del. J. Corp. L. 1250, 1261-62 (Del. Ch. Jan. 19, 1988).
[104] *Id.*
[105] *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) (citing *Pogostin v. Rice*, 480 A.2d 619, 624 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).
[106] D.I. 1 at ¶¶ 16-19.

analysis, Individual Defendants may be treated as a controlling shareholder. Plaintiffs asserted Individual Defendants used their control over Exinda to promote and advance a transaction that was not substantially fair to Plaintiffs, as shareholders in Exinda.[107] Furthermore, Plaintiffs claim Individual Defendants put their interests and the interests of OpenView ahead of Exinda's and Plaintiffs' interests.[108] Therefore, Defendants' motion to dismiss Count III based on breach of duty of loyalty is denied.

### 2. Duty of Care

"The duty of directors to exercise due care appears in two contexts. First directors must exercise the requisite degree of care in the process of decision-making and act on an informed basis. Second, directors must also exercise due care in the other aspects of their responsibilities."[109] In order to make a claim of breach of the duty of care, a plaintiff must plead "that the directors knew or . . . should have known that violations . . . were occurring and, in either event, that the directors took no steps in a good faith effort to prevent or remedy the situation, and that such failure proximately resulted in the losses complained of . . . ."[110] "A trial court will not find a board to have breached its duty of care unless the directors individually and the board collectively have failed to inform themselves fully and in a deliberate manner . . . ."[111] Therefore, a trial court must find the directors individually and the board collectively acted in a grossly negligent manner.[112]

---

[107] *Id.* at ¶¶ 5-9, 32, 34, 35-37, 40, 41, 45, 46, and 62.
[108] *Id.* at ¶¶ 5, 8, 31, 32, 34, 35, 37, 40, 42, 45, and 62.
[109] 1 R. Franklin Balotti & Jesse A. Finkelstein, *Delaware Law of Corporations and Business Organizations* § 4.15 (Aspen Publ. 2012).
[110] *In re Caremark Intern. Inc. Derivative Litigation*, 698 A.2d 959, 971 (Del. 1996).
[111] *Technicolor*, 634 A.2d 345, 368 (Del. 1993).
[112] *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369 (Del. 2006).

Plaintiffs have not established a claim for breach of duty of care because there are no facts alleged demonstrating Individual Defendants failed to "inform themselves fully and in a deliberate manner,"[113] or acted in a grossly negligent manner in decision making, or showed they failed to exercise a reasonable degree of care.

Defendants' motion to dismiss Count III based on breach of duty of care is granted; however, Plaintiffs's request for leave to amend the complaint is also granted.[114]

### Count IV:  Intentional Interference with Prospective Economic Advantage

In order to plead the tort of intentional interference with prospective economic advantage,[115] a plaintiff must allege:  "'(a) the reasonable probability of a business opportunity, (b) the intentional interference by defendant with that opportunity, (c)

---

[113] *Technicolor*, 634 A.2d at 368.

[114] [FED. R. CIV. P.] 8 governs the appropriateness of the averments of a complaint. FED. R. CIV. P. 15(a) controls amendments to the complaint, which provides that "leave to amend shall be freely given when justice so requires."  Although the determination of whether to allow an amendment is within the discretion of the court under *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court has instructed that leave to amend should be freely granted "in the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of the amendment, etc." *Foman*, 371 U.S. at 182. However, a court may deny leave to amend a complaint when an amendment would be futile. *See Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2006).
*Harrison v. Henry*, C.A. No. 08-352-SLR/MPT, 2009 WL 464260, at *9 (D. Del. Feb. 24, 2009).
Plaintiffs requested leave to amend, (D.I. 17 at 16-17,) and  Defendants and OpenView counter leave to amend would be futile. (D.I. 14 at 13-17; D.I. 22 at 10.)  Defendants and OpenView rely on the above mentioned exhibits A through F in support of their argument to deny leave to amend.  Since the court struck those exhibits, Defendants and OpenView no longer have an adequate basis to support their argument.  Additionally, "[a]t this junction, the court has no idea what additional facts or information [Plaintiffs] propose to add to [their] complaint to resolve the deficiency." *Harrison*, 2009 WL 464260, at *9. Therefore, leave to amend is granted.

[115] The tort of intentional interference with prospective economic advantage is also known as intentional interference with prospective business opportunity.  *Triton Const. Co., Inc. v. E. Shore. Elec. Serv., Inc.*, No. 3290-VCP, 2009 WL 1387115, at *18 (Del. Ch. May 18, 2009).

proximate causation, and (d) damages."[116]   Additionally, "direct claims are available only where the [plaintiff] has suffered damage . . . independent[ly] of any damage suffered by the . . . company."[117]

Plaintiffs are proceeding under two theories:   interference with their stock options and back-pay and earned commissions.

### 1.  Stock Options

Plaintiffs claim they held "option grants for more than 1,500,000 shares . . . worth roughly $15 million if Exinda" was valued approximately at $90 million.  Plaintiffs also contend Defendants intentionally terminated them without cause immediately before their largest option grant would vest in October 2011,[118] thereby causing drastic financial harm to them, and personally benefitting Defendants.[119]  Thus, Plaintiffs have properly pled the first two elements of intentional interference with prospective economic advantage.

Regarding proximate cause, Plaintiffs allege Defendants false and misleading statements, as previously discussed above, and firing Plaintiffs before their options vested,[120] sufficiently address proximate cause, since such conduct could reasonably and probably produce the injury alleged.[121]  Plaintiffs adequately pled the "liability of the [D]efendants for the alleged tort."[122]  Lastly, Plaintiffs assert damages in excess of $15

---

[116] *Kuroda v. SPJS Holdings, LLC.*, 971 A.2d 872, 886-87 (Del. Ch. 2009) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 428 A.2d 1151, 11153 (Del. 2004) (quoting *DeBonaventura v. Nationwide Mut. Ins. Co.*, 419 A.2d 942, 947 (Del. Super. Ct. 1980))).
[117] *Kuroda*, 971 A.2d at 887.
[118] D.I. 1 at ¶¶ 43 and 65.
[119] *Id.* at ¶¶ 45 and 67.
[120] *Id.* at ¶ 68.
[121] *Blacks Law Dictionary* 234 (8th ed. 2004).
[122] *DeBonaventura*, 428 A.2d at 1153.

million,[123] resulting from Defendants' and OpenView's conduct.

For the aforementioned reasons, Defendants' and OpenView's motion to dismiss Count IV as it relates to the stock options is denied

### 2. Back-pay and Commissions

Plaintiffs' second theory for back-pay and commissions is dismissed because it relates to past events, and not to prospective or future events.  In analyzing this claim, guidance is found in the Delaware Court of Chancery opinion of *Kuroda v. SPJS Holdings*,[124] where the court determined the plaintiff "has not made any factual allegations that would support a reasonable inference that he . . . had a reasonable probability of a business opportunity . . . ."[125]  Similarly, in the instant matter, Plaintiffs made no factual allegations that support the probability of business opportunity.  They assert factual allegations of previous business opportunities, but not probable future ones.[126]

Therefore, Defendants' and OpenView's motion to dismiss Count IV as it relates to back-pay or commissions previously earned is granted.  Furthermore, Plaintiffs leave to amend is denied as it would be futile.[127]

### Count V:  Negligent Interference with Prospective Economic Advantage

Since all parties agree this count should be dismissed,[128] Count V is dismissed.

---

[123] D.I. 1 at ¶ 69.

[124] *Kuroda*, 971 A.2d 872.

[125] *Id.* at 887.

[126] The court's reasoning for the difference in outcomes between the stock options and back-pay and earned commissions is that stock options, by their nature, provide for a future, or prospective, business opportunity, whereas, back-pay and earned commissions are retrospective.

[127] Granting leave to amend would be futile for this theory of the claim because there are no facts that can be pled which would convert a completed past transaction into a potential future one.

[128] D.I. 17 at fn. 7; D.I. 22 at 9.

**Count VI:  Conversion**

"Generally speaking, any distinct act of dominion wrongfully exerted over the property of another, in denial of his right or inconsistent with it, is a conversion."[129]  "A corporation itself may interfere with the rights of the stockholder . . . and thus become liable for conversion."[130]

In order to plead a claim of conversion, the following elements must be alleged: "(a) the plaintiff held a property interest in the stock [or other property]; (b) [the] plaintiff had a right to possession of the stock [or other property]; and (c) the defendant converted plaintiff's stock [or other property]."[131]

Plaintiffs properly pled this claim.  As noted previously, Plaintiffs held stock, a property interest, in Exinda. Their property interest consisted of 18% of Exinda's common stock.[132]  Plaintiffs contend, because of Defendants' dominion and control, they lost 90% of their ownership.[133]  Plaintiffs maintain they had a right to the stock through their equity interest in stock options.[134]  Further, Plaintiffs pled their right to the stock was interfered with by the fraudulent actions of the Defendants, and they were subsequently stripped of their stock options.[135]  Thus, Plaintiffs adequately pled the requirements necessary for a claim of conversion.  As a result, Defendants' motion to dismiss Count VI is denied.  However, Plaintiffs have not made sufficient factual allegations to support a claim of conversion by OpenView.  Therefore, OpenView's

---

[129] *Drug, Inc. v. Hunt*, 168 A. 87, 93 (Del. 1933).
[130] *Id.* (internal quotation marks omitted).
[131] *Arnold v. Society for Sav. Bancorp, Inc.*, 678 A.2d 533, 536 (Del. 1996).
[132] D.I. 1 at ¶ 77.
[133] *Id.* at ¶ 78.
[134] *Id.* at ¶ 9.
[135] *Id.* at ¶¶ 44-45.

motion to dismiss Count VI is granted, and Plaintiffs are granted leave to amend.

### Count VII:  Bad Faith Termination

Delaware law creates a heavy presumption that a contract for employment is at will with an indefinite duration.[136]  The Delaware Supreme Court has identified only four situations where an "employer's authority to terminate an employee is limited by the implied covenant of good faith and fair dealing."[137]  These four situations are:

> (1) where the employee's termination violates public policy, (2) where the employer misrepresents an important fact and the employee relies on it when deciding to accept a new position or to remain at a present one, (3) where the employer uses its superior bargaining power to deprive an employee of identifiable compensation related to an employee's past service, and (4) where an employer through deceit, fraud, and misrepresentation manipulates the record "to create fictitious grounds to terminate employment."[138]

An employer would be acting in bad faith and breaching the implied covenant of good faith and fair dealing,[139] if an employee was terminated in one of the four situations listed above.  Therefore, a plaintiff must properly plead one of these four situations in order to survive a motion to dismiss.

Plaintiffs do not state facts supporting:  their termination violated public policy; they relied on a misrepresentation to accept a new position or to remain at their present one; or any record was manipulated to create "fictitious grounds to terminate the employment."[140]

Plaintiffs do state a claim under the third exception, depriving them of back-pay

---

[136] *Bailey v. City of Wilmington*, 766 A.2d 477, 480 (Del. 2001) (citing *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 102 (Del. 1992)).

[137] *Id.* at 480.

[138] *Id.* (quoting *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 443-44 (Del. 1996)).

[139] *See Pressman*, 679 A.2d at 443-44; *see also Bailey*, 766 A.2d at 480.

[140] *Bailey*, 766 A.2d at 480.

and earned commissions through the Defendants' superior positions as members of

Exinda's board.[141]   The amount of back-pay and earned commissions denied to each

plaintiff was $85,000.[142]  Plaintiffs further support a claim for wrongful termination

because their employment was ended to deprive them of 1.5 million stock options,[143]

whereby Defendants used these options to enrich themselves,[144] and granted new

employees options taken from Plaintiffs.[145]  Therefore, Defendants' motion to dismiss

Count VII is denied.

### Count VIII:  Unjust Enrichment

"Unjust enrichment is the 'unjust retention of a benefit to the loss of another, or

the retention of money or property of another against the fundamental principles of

justice or equity and good conscience.'"[146]  In order to plead a claim of unjust

enrichment a plaintiff must allege:  "(1) an enrichment, (2) an impoverishment, (3) a

relation between the enrichment and impoverishment, (4) the absence of justification,

and (5) the absence of a remedy provided by law."[147]  The impoverishment element

does not require an actual financial loss, "because restitution may be awarded based

solely on the benefit conferred upon the defendant, even in the absence of an

impoverishment suffered by plaintiff."[148]

Regarding the matter at bar, by pleading Defendants and OpenView were

---

[141] D.I. 1 at ¶¶ 12, 16-19, 21

[142] *Id.* at ¶¶  65, 71.

[143] *Id.* at ¶¶  11, 43, 44, 81.

[144] *Id.* at ¶¶  42, 82.

[145] *Id.* at ¶ 42.

[146] *Metcap Sec., LLC v. Pearl Sr. Care, Inc.*, No. 2129-VCN, 2009 WL 513756, at *5 (Del. Ch. Feb. 27, 2009) (quoting *Schock v. Nash*, 732 A.2d 217, 232 (Del. 1999)).

[147] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. Ch. 2010) (quoting *Jackson Nat. Life Ins. Co. v. Kennedy*, 741 A.2d 377, 393 (Del. Ch. 1999)).

[148] *Id.* at 1130 n.37 (quoting *Metcap*, 2009 WL 513756, at *5 n.26).

enriched by acquiring 90% of Plaintiffs' former stock ownership and their 1.2 million

stock options, as a result of fraudulent conduct and misrepresentations, and failing to

reimburse them for back-pay and earned commissions, Plaintiffs adequately raise a

claim for unjust enrichment.  Plaintiffs assert their loss or damages equates to

Defendants' and OpenView's level of enrichment.  They further contend there is no

justification for the improper actions of Defendants and OpenView.[149]  Thus, Plaintiffs

satisfy the first four of the elements for unjust enrichment.

With respect to the fifth element, absence of a remedy at law, in *Grace v.*

*Morgan*,[150] a plaintiff was allowed to proceed on a claim of unjust enrichment where only

a monetary award, rather than an equitable remedy, was sought.  The situation in *Grace*

is similar to this matter, since Plaintiffs are seeking monetary damages.  Additionally,

"[f]ederal rules allow pleading in the alternative;"[151] therefore, "it would be premature at

this stage of the proceedings to dismiss the . . . unjust enrichment claim[ ] on this

basis."[152]

For the reasons above, Defendants and OpenView's motion to dismiss Count VIII

is denied.

### Count IX:  Unpaid Wages and Liquidated Damages

"The Wage Act[[153]] was enacted by [Delaware's] General Assembly to provide

payment of employees' wages and to enforce collection.  It also provides for a penalty in

---

[149] D.I. 1 at ¶¶ 86-88.
[150] *Grace v. Morgan*, No. Civ. A. 03C05260JEB, 2004 WL 26858, at *3 (Del. Super. Ct. Jan. 6, 2004).
[151] *U.S. v. Kensington Hosp.*, 760 F. Supp. 1120, 1135 (E.D. Pa. 1991).
[152] *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004).
[153] 19 Del. C. §§ 1101-15.

an amount equal to the amount of the outstanding wages, if the employer withheld pay from an employee without reasonable grounds."[154]  The statute defines an employee as "any person suffered or permitted to work by an employer under a contract of employment either made in Delaware or to be performed wholly or partly therein."[155] Further, 19 *Del. C.* § 1103(a) provides:  "whenever an employee quits, resigns, is discharged, suspended or laid off, the wages earned by the employee shall become due and payable by the employer . . . ."  If any of these events occur and the employer without reasonable grounds withholds the wages, then the employer shall "be liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day . . . or in an amount equal to the unpaid wages, whichever is smaller."[156] Thus, the elements for a claim under 19 *Del. C.* § 1103 are:  1) plaintiff was an employee of the employer, 2) under a contract made in Delaware or to be performed in Delaware, 3) whose wages were withheld, and 4) there were no reasonable grounds to withhold the wages.

Plaintiffs fail to state a cause of action under 19 *Del. C.* § 1103 because they failed to plead a contract was made in Delaware, and either part of or all of the work was to be performed in Delaware.  It is not enough to merely allege Exinda was incorporated in Delaware, because incorporation in a particular state does not mean that all the corporation's contracts are made or performed in the incorporating state. Therefore, Defendants motion to dismiss Count IX is granted, with leave to amend

---

[154] *Kutney v. Saggese*, No. 99C-11-205-JEB, 2002 WL 1463092, at *1 (Del. Super. Ct. July 8, 2002) (footnote omitted).

[155] *Kutney*, 2002 WL 1463092 at, *1; 19 *Del. C.* § 1101(a)(3).

[156] *Rypac Pack. Mach. Inc. v. Coakley*, No. Civ. A. 16069, 2000 WL 567895, at *13 (Del. Ch. May 1, 2000) (quoting 19 *Del. C.* § 1103(b)).

granted to Plaintiffs.

### Count X:  Aiding and Abetting Breaches of Fiduciary Duty

In order to plead a claim of civil conspiracy or aiding and abetting,[157] four

elements must be asserted.  These elements are:  "(1) the existence of a fiduciary

relationship, (2) a breach of the fiduciary's duty . . . (3) knowing participation in that

breach by the party not in direct fiduciary relationship . . . [and (4)] damages resulting

from the actions of the conspiracy parties."[158]  "'In order to be found liable for aiding and

abetting a breach of fiduciary duty, one must demonstrate that the party knew that the

other's conduct constituted a breach of a fiduciary duty and gave substantial assistance

or encouragement to the other in committing that breach.'"[159]  Additionally, "[a] plaintiff

must demonstrate the defendant's 'knowing participation' with specific facts."[160]

Plaintiffs fail to state a claim against OpenView for aiding and abetting breach of

fiduciary duty because they neither demonstrated nor alleged any specific facts that

OpenView knowingly participating in the alleged breach of fiduciary duty.  Plaintiffs

allege that part of Exinda's board were partners of OpenView,[161] and these partners

falsely represented information to Plaintiffs for the benefit of themselves and

OpenView.[162]  Such facts are insufficient to give rise to an inference of substantial

---

[157] *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del. Ch. 1984); *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del. Ch. 1986).

[158] *Gilbert*, 490 A.2d at 1057.  "The essence of a criminal conspiracy is the agreement, the essence of a civil conspiracy is damages." *Gilbert*, 490 A.2d at 1057 (quoting *Weinberger v. UOP, Inc.*, 426 A.2d 1333, 1348 (Del. Ch. 1981), *rev'd on other grounds*, 457 A.2d 701 (Del. 1983) (citing 16 Am. Jur. 2d *Conspiracy* §49; 15A C.J.S. *Conspiracy* §1)).

[159] *In re Jevic Hold. Corp.*, No. 08-11006 (BLS), 2011 WL 4345204, at *13 (Bankr. D. Del. Sept. 15, 2011) (quoting *Bd. Of Trs. Of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2002) (citing *Resolution Trust Corp. v. Spagnoli*, 811 F. Supp. 1005, 1014 (D.N.J. 1993))).

[160] *Jevic Hold.*, 2011 WL 4345204, at *13 (quoting *Foodtown*, 296 F.3d at 174).

[161] D.I. 1 at ¶ 29.

[162] *Id.* at ¶¶ 32, 34-36.

encourage on the part of OpenView to aid or abet those partners, the Individual Defendants, in breaching their fiduciary duty to Plaintiffs.

As a result, OpenView's motion to dismiss Count X is granted, and leave to amend is granted to Plaintiffs.

## ORDER AND RECOMMENDED DISPOSITION

Consistent with the reasoning herein, it is recommended:

1) Defendants' Motion to Dismiss (D.I. 13), pursuant to FED. R. CIV. P.  12(b)(6), be granted in-part and denied in-part.

2) Plaintiffs' Motion to Strike (D.I. 18), pursuant to FED. R. CIV. P.  12(f), be granted in-part and denied in-part.

3) Plaintiffs shall have until September 7, 2012 to amend their complaint to add claims of breach of fiduciary duty of care and under 19 *Del. C.* §1103 against Defendants.

4) Plaintiff shall have until September 7, 2012 to amend their complaint to add claims of conversion and aiding and abetting breach of fiduciary duty against OpenView.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. LR 72.1.  The Parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  These objections and responses to those objections are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-*Pro Se* Matters for Objections Filed under Fed. R. Civ. P. 72 (dated April 7, 2008), a copy of which is found on the Court's website (www.ded.uscourts.gov.)

Date: August 7, 2012     /s/ Mary Pat Thynge
             United States Magistrate Judge